UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HOWARD STEPHEN SNYDER                                                    PLAINTIFF


v.                                                    CIVIL ACTION NO. 3:12-CV-00659-CRS


LADY SLINGS THE BOOZE, LLC                                              DEFENDANT
d/b/a THIRD STREET DIVE


**MEMORANDUM OPINION**

This matter is before the Court on the renewed motion of Plaintiff Howard Stephen

Snyder for partial summary judgment (DN 37).  Plaintiff asserts that he is entitled to summary

judgment on his claim of discrimination under the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12182.  For the following reasons, the Court will grant Plaintiff's renewed

motion for partial summary judgment.

I.      BACKGROUND

Plaintiff suffers from muscular dystrophy, a disease that impairs his mobility to the extent

that he must use a motorized wheelchair.[1]  On June 8, 2012, Plaintiff tried to enter a bar known

as Third Street Dive, which Defendant Lady Slings the Booze, LLC, owns and operates.  Third

Street Dive's entrance directly abuts a public sidewalk and has a step of approximately four

inches in height at the doorway's threshold.  Upon inquiry with the bar's manager, Plaintiff

learned that Defendant did not provide a ramp of any kind to aid wheelchair users in accessing

the facility.  The parties dispute what next occurred.  Plaintiff claims that Defendant excluded

him from bar based on the allegation that the step violated the ADA, but Defendant asserts that it

---

[1] Unless otherwise indicated, the facts in this section are undisputed.

denied Plaintiff's entry because he appeared intoxicated, behaved belligerently, and refused to pay the cover charge.

Prior to that incident, Defendant did apply for a building permit to eliminate the four-inch step with a permanent ramp. (Building Permit, Jan. 13, 2011, DN 28-1.) However, the permit application was denied because a permanent ramp at that location would create a tripping hazard by reducing the useable width of the public sidewalk. (Building Permit, Jan. 13, 2011, DN 28-1; Wohlleb and Brown Emails, DN 28-1; Barcenas Aff., DN 28-1, ¶ 8.) In place of a ramp, Defendant instructed its employees to assist wheelchair users by lifting or pushing them over the four-inch step. (Frost Aff., DN 28-1, ¶ 4; McDaniel Aff., DN 28-1, ¶ 4; *see also* Barcenas Aff., DN 28-1, ¶¶ 5–6.) Defendant maintains that such human assistance is its preferred method of providing access to wheelchair users and that offering human assistance alone satisfies its legal obligations. Defendant nonetheless admits that, after this litigation commenced, it did purchase a portable ramp for the entrance of Third Street Dive, but it still argues that the use of a portable ramp is unnecessary. (Barcenas Aff., DN 28-1, ¶ 9; Darr Aff., DN 28-1, ¶ 10; Frost Aff., DN 28-1, ¶ 5.)

On October 15, 2012, Plaintiff filed this action alleging discrimination (Count I) and retaliation (Count II) in violation of the ADA. (Compl., DN 1; *see* Am. Compl., DN 6.) On September 15, 2013, Plaintiff moved for summary judgment on his ADA discrimination claim (DN 27). Plaintiff argued that no genuine dispute existed regarding Defendant's failure to remove an architectural barrier as required by the ADA. Then, on October 22, 2013, Defendant moved for summary judgment on both the discrimination and retaliation claims (DN 30). First, Defendant argued that the discrimination claim failed because removal of the step was not readily achievable and human assistance satisfied its ADA obligations. Second, Defendant

argued that the retaliation claim failed because Plaintiff was denied admission based on his alleged intoxication, belligerent behavior, and refusal to pay the cover charge.

On May 21, 2014, the Court denied both parties' motions.  (Mem. Op., May 21, 2014, DN 34; Order, May 21, 2014, DN 35)  The Court denied Plaintiff's motion for partial summary judgment based on his failure to support the motion with citations to materials contained in the record as required by Federal Rule of Civil Procedure 56(c).  With respect to Defendant's motion, the Court denied summary judgment on the discrimination claim because Defendant failed to carry its burden in showing that a portable ramp was not readily achievable. Additionally, the Court concluded that a genuine issue of material fact existed regarding the reason Plaintiff was denied admission to the bar.  That factual dispute precluded summary judgment on the retaliation claim.

On June 3, 2014, Plaintiff filed a renewed motion for summary judgment (DN 37), correcting the lack of citations in its previous motion.  Once again, Plaintiff calls upon this Court to grant summary judgment in his favor on the ADA discrimination claim based on Defendant's failure to remove the four-inch step as an architectural barrier.[2]

## II.    STANDARD

The Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of explaining the basis of its motion and demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  That burden may be

---

[2] Plaintiff also requested an award of reasonable attorney's fees without including any evidence to establish the amount of such an award.  The Court concludes that consideration of an attorney's fee award is premature at this time.  A decision on the pending motion will not resolve all of the claims in this action.  Plaintiff's ADA retaliation claim (Count II) must still be adjudicated, and additional fees and litigation costs will continue to mount as the case proceeds.

satisfied only by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Should the movant meet its burden, the nonmoving party may not simply rest on its prior pleadings; it must produce further evidence showing a genuine issue for trial. *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Even so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . . ." *Id.* at 252.

## III.     DISCUSSION

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). To establish a prima facie case of Title III discrimination, a plaintiff must demonstrate that (1) he has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him on the basis of his disability in the full and equal enjoyment of that place of public accommodation. *Id.*; *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1166 (E.D. Mich. 1994). Here, the parties do not dispute that Plaintiff's muscular dystrophy is a disability, *see* 42 U.S.C. § 12102, or that

Defendant owns and operates Third Street Dive as a place of public accommodation, *see id.* § 12181(7)(B).  The issue that remains unresolved is whether Defendant discriminated against Plaintiff in violation of Title III of the ADA.

Discrimination under Title III includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). When the defendant can demonstrate that the removal of an architectural barrier is not readily achievable, discrimination also includes "a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." *Id.* § 12182(b)(2)(A)(v).  Plaintiff argues that the four-inch step at the entrance of Third Street Dive is an architectural barrier and that its removal is readily achievable through use of a permanent or portable ramp.

Though not defined in the ADA, the term "architectural barrier" is interpreted to mean any element of an existing facility that does not meet or exceed the requirements of the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). *Wyatt v. Ralphs Grocery Co.*, 65 F. App'x 589, 590 (9th Cir. 2003); *Parr*, 96 F. Supp. 2d at 1086; *Pascuiti v. N.Y. Yankees*, 87 F. Supp. 2d 221, 225–26 (S.D.N.Y. 1999).  Under Standard 404.2.5 of the 2004 ADAAG, "[t]hresholds, if provided at doorways, shall be 1/2 inch (13 mm) high maximum," and "[r]aised thresholds and changes in level at doorways shall comply with [Standards] 302 and 303."  36 C.F.R. pt. 1191, app. D, 404.2.5.  Standard 404.2.5 offers one exception for "[e]xisting or altered thresholds 3/4 inch (19 mm) high maximum that have a beveled edge on each side with a slope not steeper than 1:2."  *Id.*  If that exception does not apply, Standard 303.4 mandates that "[c]hanges in level greater than 1/2 inch (13 mm) high shall be ramped, and shall comply with [Standards] 405 or 406."  *Id.* pt. 1191, app. D, 303.4.

The four-inch step at the entrance of Third Street Dive surpasses the maximum height

permitted by Standard 404.2.5's general rule and its exception.  Therefore, Standard 303.4

applies and makes clear that a change in level of four inches must be accomplished by a ramp,

rather than a step.  Because Defendant's four-inch step does not comply with the requirements of

the 2004 ADAAG, the Court concludes that the step constitutes an architectural barrier, which

must be removed if it is readily achievable to do so. [3]

The removal of an architectural barrier is readily achievable when it is "easily

accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C.

§ 12181(9).  Whether a barrier removal is readily achievable is "determined on a case-by-case

basis in light of the particular circumstances presented."[4]  28 C.F.R. pt. 36, app. C.  The ADA's

implementing regulations offer numerous examples of measures undertaken to remove

architectural barriers—the first of which is "[i]nstalling ramps."  *Id.* § 36.304(b)(1).  The

commentary on those regulations more fully explains when ramping is required to remove a step

barrier:

> A public accommodation generally would not be required to remove a barrier to
> physical access posed by a flight of steps, if removal would require extensive
> ramping or an elevator.  Ramping a single step, however, will likely be readily

---

[3] The 1991 ADAAG set forth similar requirements regarding the necessity of a ramp and produce the same result in this case.  Under those guidelines, Standard 4.13.8 states that "[t]hresholds at doorways shall not exceed 3/4 in (19 mm) in height for exterior sliding doors or 1/2 in (13 mm) for other types of doors."  28 C.F.R. pt. 36, app. D, 4.13.8.  Standard 4.5.2 provides that "[c]hanges in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp that complies with [Standards] 4.7 or 4.8."  *Id.* pt. 36, app. D, 4.5.2.

[4] The ADA sets out various factors to be considered in determining whether a barrier removal is readily achievable: (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of the action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.  42 U.S.C. § 12181(9)(A)–(D); *see* 28 C.F.R. § 36.104.  While those factors may often be useful, they are not particularly relevant to the facts of this case.  As discussed below, the outcome of Plaintiff's ADA discrimination claim turns on two central facts:  (1) Defendant's inability to obtain a building permit for a permanent ramp and (2) Defendant's purchase of a portable ramp.

achievable, and ramping several steps will in many circumstances also be readily achievable.

*Id.* pt. 36, app. C.  Furthermore, if a ramp is needed to eliminate an architectural barrier, construction of a permanent ramp is preferred over use of a portable ramp.  *Id.* § 36.304(e). "Portable ramps should be used [to remove architectural barriers] only when installation of a permanent ramp is not readily achievable."  *Id.*

The Court must first determine whether installing a permanent ramp to eliminate the four-inch step is readily achievable.  Defendant argues that a permanent ramp is not readily achievable because a building permit cannot be obtained for its construction.  Prior to this litigation, Defendant sought a building permit to install a permanent ramp, but that permit was denied because such a ramp would excessively reduce the public sidewalk.  (Building Permit, Jan. 13, 2011, DN 28-1.)  Subsequent correspondence with local officials confirmed the decision to deny the permit and again noted that the proposed ramp would decrease the usable width of the sidewalk below minimum standards.  (Wohlleb and Brown Emails, DN 28-1; Barcenas Aff., DN 28-1, ¶ 8.)  Even so, Plaintiff maintains that a permanent ramp is readily achievable, arguing that Defendant must continue to pursue a building permit or somehow secure a waiver.  But Plaintiff offers no evidence to undermine Defendant's position or to show that further efforts to procure a building permit would be anything more than an exercise in futility.  All evidence in the record indicates that Defendant cannot install a permanent ramp without violating local permitting requirements.  For that reason, the Court concludes that removal of the four-inch step is not readily achievable by means of a permanent ramp, and it must now examine the potential for use of a portable ramp.

In this case, a portable ramp is an obvious, readily achievable option for removing the four-inch step barrier.  In fact, since Defendant admits to purchasing a portable ramp, the barrier

removal is all but achieved.  (Barcenas Aff., DN 28-1, ¶ 9; Darr Aff., DN 28-1, ¶ 10; Frost,

DN 28-1, ¶ 5.)  The only catch is Defendant's unwillingness to use the portable ramp.

Defendant, by counsel, explains its aversion to the portable ramp as follows:

> The Defendant has a portable ramp.  It can use it, and if a wheelchair bound
> person wanted or needed it, it would.  But Defendant prefers not to because the
> same tripping risk exists with it as does a permanent ramp; it alters the level
> nature of the sidewalk immediately in front of the threshold as much as a
> permanent ramp would.

(Resp. to Pl.'s Mot. for Partial Summ. J., DN 28, at 15.)  However, any tripping hazard posed by

a portable ramp certainly does not rise to the same level of risk presented by a permanent ramp.

A permanent ramp, if installed, would stay in place at all times, including when the bar is closed

and no doorman or other employee is on the premises to warn pedestrians about the uneven

sidewalk.  In contrast, a portable ramp could be set up by an employee each time a wheelchair

user wishes to enter the bar and removed when not needed.  The employee in charge of the

portable ramp, with a modest showing of vigilance, could also prevent pedestrians from tripping

over the temporary obstacle.  Other than its flimsy argument about the tripping hazard,

Defendant puts forward no record evidence to suggest that using a portable ramp is not readily

achievable.  Moreover, neither party disputes the sufficiency of the portable ramp owned by

Defendant in terms of its ADA compliance.  Therefore, the Court concludes that removal of the

four-inch step as an architectural barrier is readily achievable through the use of Defendant's

portable ramp.

Though Defendant insists that it may provide human assistance as a substitute for using a

portable ramp, the ADA does not permit a place of public accommodation to make that choice.

When removal of an architectural barrier is not readily achievable, a place of public

accommodation may need to offer its benefits through alternative methods to avoid a

discrimination claim.  42 U.S.C. § 12182(b)(2)(A)(v); 28 C.F.R. § 36.305.  But, if barrier

removal is readily achievable, the public accommodation may not simply choose the easier

alternative method over actual removal.  *See* 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R.

§ 36.304.  Permanent and portable ramps are examples of barrier removal specifically mentioned

by the ADA's regulations.  28 C.F.R. § 36.304(b)(1), (e).  Human assistance, on the other hand,

is analogous to the examples of alternatives to barrier removal, such as "[p]roviding curb service

or home delivery" and "[r]etrieving merchandise from inaccessible shelves or racks."  *Id.*

§ 36.305(b)(1)–(2).  Because removal of the four-inch step as an architectural barrier is readily

achievable with Defendant's portable ramp, offering human assistance alone is not an available

option.

       The Court concludes that Plaintiff is entitled to summary judgment in his favor on the

ADA discrimination claim.  The four-inch step at the entrance of Third Street Dive is an

architectural barrier to the access of wheelchair users.  Accordingly, Defendant must remove that

barrier by providing adequate notice of and freely employing its portable ramp.

## IV.    CONCLUSION

       For the reasons stated above, the Court will grant Plaintiff's renewed motion for partial

summary judgment (DN 37).  A separate order will be entered this date in accordance with this

Memorandum Opinion granting summary judgment to Plaintiff on his ADA discrimination claim

(Count I).

December 23, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**